# CIRCUIT COURT OF BALTIMORE CITY.

Filed June 6, 1906.

WESTERN MARYLAND RAILROAD COMPANY
VS.
MARGARET H. McCAFFERTY ET AL.

*Gaither & Greenbaum* for plaintiff.
*Isaac Lobe Straus* and *Joshua Horner, Jr.,* for defendants.

SHARP, J. (orally.)—

These proceedings were instituted by the Western Maryland Railroad Co. against the defendants to obtain the condemnation of certain land on the Patapsco river. The proceedings were in the usual form, and the award of the jury to the owners of the property and mortgagees was $39,750. The defendants except to the confirmation of the award. The chief grounds of objection to the confirmation arise out of the riparian rights.

It is contended the proceedings are defective among other reasons because the riparian rights are not correctly described. In the absence of statute, the owner of land abutting on navigable water is entitled to the dry land to the high water mark only; the land under the water belongs to the State. 8 E. of 1, 819.

By the Code, Article 54, Section 481, it is provided that "the proprietor of land bounding on any of the navigable waters of the State shall be entitled to the exclusive right of making improvements in the waters in front of said land, such improvements and other accretions as above provided, however, shall pass to the successive owners of the land to which they are attached as incident to their respective estates."

Article 98, Section 21, provides that "any person owning real estate in fee-simple, or having therein an use for years, renewable forever, on any of the navigable waters of the State may construct wharves thereon and extend the same such a distance into the stream as may be required to admit the safe approach thereto of any vessel navigating said waters," etc.

The abutting owner is entitled to all accretions to his land caused by the recession of the water. Code, Article 54, Section 47.

The Act of 1745, Chapter 9, Section 10, a local law for Baltimore city, provided that "all improvements of any kind whatsoever, either wharves, houses or other buildings that have or shall be made out in the water or where it usually flows, shall (as an encouragement to such improvers), be forever deemed the right, title and inheritance of such improvers, their heirs and assigns forever."

The owners of the land taken in this case claim no grant from the State of the land under the waters adjacent to the property, and their riparian claims can only arise out of the sections of the Code which have been referred to or as the defendants contend, the Act of 1745, Chapter 9, Section 10.

The Act of 1745, Chapter 9, Section 10, has no application to the present case. It refers to improvements. It gives no right to unimproved land under the water adjoining the abutting land. Moreover, it was not in force when the proceedings took place. It is not found in the Code of Public Local Laws or in the New Charter, Act of 1900, Chapter 123. The Guano Company improved its front, and as was decided in Classen's case, was entitled to its improvements to the bulkhead line. But the right to improve has not been availed of by the Horners. Ordinarily, in this State, the riparian rights have no existence apart from the ownership of the abutting land.

Section 48, Article 54 of the Code, provides that such improvements or accretions shall pass to the successive owners of the land to which they are attached as incident to their respective estates. The construction of the other section is necessarily the same.

It may be that after the owners of the abutting land have availed themselves of the privileges, particularly under the Act of 1745, while this Act was in force, of erecting improvements of a permanent character, that they could not thereafter be divested.

Any condemnation of the riparian rights, apart from the abutting property, would be impossible, such rights pass unavoidably as an incident to the grant of the abutting land.

It is, therefore, no objection to the ratification of these proceedings that the riparian rights are in Baltimore county or that such rights were not described by metes and bounds.

In this case the riparian rights pass by the condemnation proceedings as incident to the land taken.

It is for the Court to determine by a construction of the proceedings, together with the deeds of the land owners what passed by the proceedings.

The dry land was correctly and sufficiently described. The plat filed by the Railroad Company showing the supposed riparian rights attached to the land is of no importance so far as it bears on the title. Its only importance lies in the fact that the jury may have been misled as to the value of the riparian rights attached to the lot if they were not correctly described in the proceeding. If the plat prepared by the Railroad Company and ex-

hibited to the jury did not correctly describe the riparian rights, but indicated them to be much less than they really were, the jury may have been misled concerning the value of the property.

There would be no difficulty about this case were it not that the shore line was irregular and concave. When the property lines are extended they approached each other and the riparian rights of each abutting owner grow less as the lines are prolonged. The rights of abutting owners in this locality were before the Court of Appeals in the case of Classen vs. Chesapeake Company, 81, Md., 261.

In that case it was decided that the right of the abutting owner to build to the pier-head lines was in proportion to his right to build on the bulkhead line.

The proceedings in this case were conducted, and the plat filed by the Railroad Company and exhibited to the jury was drawn in accordance with that decision.

It therefore correctly described the riparian rights of the defendant. The jury could not have been misled in accepting the plat.

This conclusion is not affected by the deed from the Horner heirs to the Guano Company or by the deed of partition between the Horner heirs. It is true that in these deeds the riparian rights are described by metes and bounds, but these riparian rights are creatures of statute and are not affected by the action of the parties. Such rights are incident to the ownership of the land, have no existence apart from the ownership of the land and are not subject to grant, except in connection with the abutting land. Any riparian rights given by the ordinances of the Mayor and City Council were revocable.

Classen vs. Chesapeake G. Co., 81 Md., 261.

After the right was taken advantage of and improvements of a permanent character made, it may be thereafter they could not be taken away, but that is not this case. The Horner heirs did not improve the land described by metes and bounds in the deeds of partition, nor did the Guano Company improve beyond the bulkhead line. The plat filed by the Railroad Company, therefore, correctly described the ri-

parian rights. It is contended by the defendant that the proceedings have been instituted under the Act of 1904, Chapter 55, that this Act is unconstitutional, being in contravention of Article 3, Section 33, of the Constitution of Maryland, which provides that the General Assembly shall pass no special law for any case for which provision is made by an existing General Law. It is contended that the powers of condemnation given by Section 3 of this Act of 1904, Chapter 55, are the same as those found in the Public General Laws of the State, Code 1904, Chapter 23, Sections 251, 360.

Section 360, Article 23 of the Code, provides for the condemnation of property of corporations. Its operation is not confined to railroad companies, but all corporations of the class referred to in this section, have the right to condemn land. This section appears in the Act of 1868, Chapter 471, Section 170. Condemnation proceedings under this Act are begun by application to one of the Judges of the Circuit Courts of the counties or the Supreme Bench of Baltimore city.

Section 251, Article 23, of the Code (1904), provides for the condemnation of property by railroad companies. Under this Act, proceedings for condemnation are begun by application to a Justice of the Peace. This Section is a codification of the Act of 1896, Chapter 151. Both are found in the Code of 1904, and are apparently of equal authority. The Act of 1896, Chapter 151 (Code 1904, Article 23, Section 251), is clearly applicable to the whole State. This is shown by the purpose of the law, it being a law providing for the incorporation of railroad companies. It is true in Section 251 no reference is made to the city of Baltimore. The warrant is to be issued by a Justice of the Peace, but the Code, Article 1, Section 13, provides that whenever the word "county" is used, it shall mean "city" unless such construction shall be unreasonable. Phinney vs. Shepherd Hospital, 88 Md., 639.

I see no reason why both sections should not stand. Section 360 being regarded as applicable to all corporations authorized to condemn property, including railroads, while the other section applies only to railroads, the Railroad Company might proceed under either. If, however, there should be any conflict between the two, Section 251 controls so far as Railroad

Companies are concerned. It was a later enactment. Is the Act of 1904, Chapter 55, Section 3, in conflict with either of these Sections of Public General Laws?

Procedure provided for the condemnation of property under the Act of 1894, Chapter 55, Section 3, is identical with that provided by Section 251 of the Code, Article 23. There is nothing in the proceedings to indicate that the Act of 1904 was relied on any more than Section 151 of the Code. The proceedings are in strict conformity with the procedure provided by the latter law. The fact is it would be impossible to tell from an examination of the proceedings under which law the proceedings are being conducted. The true construction of the proceedings, therefore, must be that they were conducted under the Code.

If the Act of 1904 be regarded as invalid and a nullity, and therefore to be left out of consideration, these proceedings are valid under the Code.

It is contended that it must be shown that the parties could not agree before there is any jurisdiction to condemn. Code, Article 23, Section 251, provides for condemnation where the parties cannot agree, but it is a jurisdictional fact. It is admitted in the record that the Railroad Company made the defendants an offer for the property, but it does not appear the defendants made any reply.

This is sufficient prima facie evidence, otherwise, it would be in the power of any land owner to prevent condemnation by merely refusing to negotiate or make any reply to an offer. With regard to the amount of this verdict: The law on this subject was stated by Judge Dobbin, sitting in the Superior Court some years ago, in the case of Western Maryland Railroad Company vs. Patterson, where the same grounds of objections were relied on. Judge Dobbin said: "In the great mass of testimony adduced before the court, there was so wide a difference of opinion as to the value of the land taken and the damages inflicted by the making of a road that looking to all the influences of speculative interest and partisanship and from other causes, with the uncertainty of the subject, it would be difficult to say on which side the preponderance was. But supposing there should be found, in the view of the

court, a mere preponderance of opinion against the finding of the jury, though not so large as to invite suspicion that the jury must have acted from strong prejudice or corrupt motives, or from having mistaken their duty from matters of law or fact, it is very questionable whether it would be the duty of the court to set aside the finding of the jury in the expectation that a second jury would reach a more just conclusion."

"It needs very little consideration of the subject to arrive at the conclusion that the duty of the court in reducing an inquisition is a special and limited one.

"It certainly is not to control the discretion and judgment confided to the jury by setting aside their finding when it shall not agree with the court's opinion, though the court should be of opinion that such judgment had been honestly exercised upon the subject which the jury are supposed to understand, and doubtless do understand, much better than the court can."

"If this were not so, the law has acted unwisely in giving to the jury the benefit of a view of the property to be condemned by requiring them to meet upon it and making no provision to assist the judgment of the court in this way."

"This single consideration would naturally lead to the conclusion there is such a difference in the function of the jury in valuing, and the court in reviewing their action as to show their duties are not the same. So one must be performed on the premises and the other in the court room."

"In the absence of anything to impugn the motives of the jury or the rule of their action, and in the belief also that they have made in their findings as near an approximation to a proper result as any other jury would be likely to do, I must confirm their action."

This same doctrine has also been enunciated by Chief Judge Harlan and more recently by this court in the case of the Western Maryland R. R. Co. vs. Dolfield.

Having carefully considered the testimony in the case, it seems to me the verdict is a reasonable one, I cannot see that any different result could be expected from another jury, and therefore I will ratify the award.